In re Darsell L. ECCLES–WALKER, Debtor.

Frederick L. Ransier, Trustee, Plaintiff,

v.

American Suzuki Financial, a/k/a American Suzuki Financial Services, Defendant.

Bankruptcy No. 04–67839.
Adversary No. 05–02172.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 28, 2007.

Brenda K. Bowers, Esq., Columbus, for the Plaintiff.

Monette W. Cope, Esq., Columbus, for the Defendant.

### MEMORANDUM OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for consideration of the Motion for Summary Judgment (Doc. 16), filed by Defendant American Suzuki Financial Services, Inc. ("Defendant"), and the Plaintiff's Memorandum Contra Motion for Summary Judgment and Cross–Motion for Summary Judgment (Doc. 17), filed in the above captioned adversary proceeding. The Court having considered the documents filed by the parties and the arguments contained therein, grants Plaintiff's Cross–Motion for Summary Judgment for reasons more fully explained below.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the standing General Order of Reference entered in this District. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F). Venue is properly before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This case was filed before most of the amendments enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") became effective; therefore this case is governed by pre-BAPCPA law.

### I. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings by Bankruptcy Rule 7056, provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of "informing the ... court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### II. Factual Background

The pertinent facts of this case are not in dispute and may be summarized as follows: On September 14, 2004, the Debtor signed a Retail Purchase Agreement with Budget Resale, Inc. for the purchase of a 2004 Suzuki Forenza (the "Vehicle"). The Purchase Agreement stated that the purchase price of the Vehicle was $18,033.98; after credit for the trade-in value of Debtor's 1999 Pontiac Sunfire and Debtor's cash deposit, the amount of $16,553.45 remained to be financed. The Purchase Agreement also stated that "[t]his Agreement shall not become binding until accepted by an Authorized Dealership Representative" and the signature

line provided for the Dealer Representative to indicate acceptance is blank.

Incorporated into the Purchase Agreement was a Spot Delivery Agreement ("Delivery Agreement"), signed by Debtor the same day, which contained the following language:

> Although I have been permitted to take possession of the [Vehicle], I understand that financing for the purchase of the vehicle has not been finalized.... The Dealership and I intend that financing for my purchase of the vehicle will be obtained directly from a third party or that the Retail Installment Contract I signed to complete the transaction will be assigned to a third party. I understand that this Spot Delivery Agreement is for the purpose of allowing me to take possession of the vehicle, subject to the following terms and conditions, until a final decision regarding my request for financing is made:
>
> ....
>
> 2. In the event that financing is not obtained from a third party for my purchase of this vehicle or the Dealership is unable to assign the Retail Installment Contract to a third party within 5 days, I will immediately return the vehicle to the Dealership upon request or I may pay the Dealership the balance due as reflected in the Retail Purchase Agreement.

Pursuant to the terms of the Delivery Agreement, Debtor took possession of the Vehicle September 14, 2004.

Debtor did not obtain financing within five days, but Budget Resale did not require the return of the Vehicle. On September 30, 2004, Debtor signed a second Retail Purchase Agreement ("Second Purchase Agreement") with Budget Resale for the purchase of the same Vehicle. This Second Purchase Agreement stated that the purchase price was $16,441.80 and the amount to be financed was $15,067.30.

This Agreement was signed by a Dealership Representative. Also on September 30, 2004, Debtor entered into a Retail Installment Sale Contract with Budget, under which he obtained financing to purchase the Vehicle. The Retail Installment Sale Contract contains the following language: "You give us a security interest in the vehicle described in this contract.... You will make sure the title shows our security interest (lien) in the vehicle." Budget Resale assigned the Retail Installment Sale Contract to American Suzuki Financial Services ("ASFS"). Debtor signed an Application for Certificate of Title for the Vehicle that same day.

On October 7, 2004, an Ohio Certificate of Title was issued reflecting ASFS as the first and only lienholder on the Vehicle. On November 9, 2004, Debtor filed a voluntary petition for relief under Chapter 7 of the U.S. Bankruptcy Code. Frederick L. Ransier, was duly appointed trustee for the bankruptcy estate and is the Plaintiff in this adversary proceeding.

### III. Legal Analysis

The Trustee seeks to avoid the lien of ASFS as a preferential transfer pursuant to § 547. The Trustee asserts that perfection of ASFS' security interest occurred more than twenty days after Debtor took possession of the Vehicle, and therefore the enabling loan exception to the Trustee's avoiding powers, as prescribed in § 547(c)(3), is unavailable.

Section 547(b) provides in pertinent part as follows:

> Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of [title 11];

(B) such transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of [title 11].

11 U.S.C. § 547(b) (2004). There appears to be no dispute that the criteria outlined by § 547(b) are met. In its defense, ASFS relies upon the enabling loan exception to the Trustee's voiding power articulated in § 547(c)(3), and upon the parameters of the concept of "transfer" set forth in § 547(e)(2) and (3).

### A. "Transfer" under Section 547(e).

Section 547(e) elaborates on the concept of "transfer," establishing the time at which a "transfer" takes place:

(2) For the purposes of this section, except as provided in paragraph (3) of this subsection, a transfer is made—

(A) at the time such transfer takes effect between the transferor and the transferee, if such transfer is perfected at, or within 10 days after, such time, except as provided in subsection (c)(3)(B);

(B) at the time such transfer is perfected, if such transfer is perfected after such 10 days; or

(C) immediately before the date of the filing of the petition, if such transfer is not perfected at the later of—

(I) the commencement of the case; or

(ii) 10 days after such transfer takes effect between the transferor and the transferee.

(3) For the purposes of this section, a transfer is not made until the debtor has acquired rights in the property transferred.

11 U.S.C. § 547(e) (2004).

Relying on this provision, ASFS insists that the Trustee may not avoid the transfer of the security interest in the Vehicle by the Debtor to ASFS because the transfer was perfected within ten days after the Debtor acquired rights in the Vehicle. ASFS points to September 30, 2004, the date on which the Second Purchase Agreement and the Retail Installment Sale Contract were executed, as the date on which Debtor acquired rights in the collateral and the date on which the security interest granted by the Debtor attached. The lien was perfected when it was noted on the certificate of title, October 7, 2004—within ten days of September 30th.

However, subsection (e) of § 547 is not an independent defense to the avoidance powers of the trustee; it merely defines the timing of when a "transfer" is made for purposes of § 547(b) and (c). The parameters of a "transfer" as defined by either § 547(e)(2) or § 547(e)(3) do not diffuse the rights of the trustee granted under 547(b).[1] Even assuming, without admitting, that the transfer between the Debtor and ASFS took place on September 30th, ASFS' theory ignores the con-

---

1. If ASFS was attempting to show that the time of transfer in this case somehow impairs the Trustee's avoidance power, it is unclear to the Court which element of § 547(b) fails under ASFS' theory.

cluding clause of § 547(e)(2)(A), which states an exception to the timing of a transfer "as provided in subsection (c)(3)(B)." This clause of § 547(e) acknowledges that the twenty (20) day deadline of § 547(c)(3)(B) for perfection of security interests (i.e., 20 days from date of possession) varies the ten (10) day period set forth in § 547(e)(2)(A) when the parties are dealing with enabling loans. *See Roost v. Toyota Motor Credit Corp. (In re Moon)*, 262 B.R. 97 (Bankr.D.Or.2001).

## B. The Enabling Loan Exception Under § 547(c)(3).

■ Section 547(c) enumerates the exceptions to the provisions of § 547(b). ASFS relies on the exception for enabling loans as set forth in § 547(c)(3), which states:

(c) The trustee may not avoid under this section a transfer—

. . .

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 20 days after the debtor receives possession of such property[.]

11 U.S.C. § 547(c) (2004).

■ ASFS urges that the twenty day period set forth in subparagraph (B) runs from the date that the Debtor acquires possession *with* transferable rights in the Vehicle, i.e., the date that the Debtor made the transfer of the security interest. ASFS cites *Weaver v. Ford Motor Credit Co. (In re McFarland)*, 131 B.R. 627 (E.D.Tenn.1990) *aff'd* 943 F.2d 52 (6th Cir. 1991), and *Phillips v. Household Automotive Finance Corp. (In re Berzito)*, 2005 Bankr.LEXIS 279 (Bankr.E.D.Va.2005) in support of its notion. This argument ignores the plain language of the statute which specifies perfection must occur within twenty days of "possession of such property." The statute does not couple possession with an ownership interest or with transferable rights. Had Congress intended to so limit the concept of possession, it knew how to do so, as illustrated by the language Congress utilized in connection with the term "transfer" in § 547(e). This Court cannot insert language in the statute that Congress chose not to place there. When interpreting a statute, courts are required to apply the statute according to its terms where the language is plain. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989); *62 Cases, More or Less, Each Containing Six Jars of Jam v. United States*, 340 U.S. 593, 596, 71 S.Ct. 515, 95 L.Ed. 566 (1951) ("[O]ur problem is to construe what Congress has written. After all, Congress expresses its purpose by words. It is for us to ascertain—neither to add nor to subtract, neither to delete nor to distort.").

In fact, the history of the statute belies ASFS' theory: the Bankruptcy Amendments and Federal Judgeship Act of 1984 altered the enabling loan exception of § 547(c)(3). As a result of the 1984 amendments, the ten day period for perfection commences at the time when a debtor receives possession of the collateral; under the earlier version, the ten day period commenced when the security interest attached. Adhering to ASFS' theory of the case would effectively reimpose

on the statute the triggering event that Congress sought to alter by amendment.[2] Clearly, Congress did not intend anything more by the term "possession" than bare possession. *See also In re Trott,* 91 B.R. 808, 811–12 (Bankr.S.D.Ohio 1988) (interpreting "possession" as used in § 523(c)(3)(B) to mean physical control or custody of the collateral).

The *McFarland* case cited by the Defendant is inapposite. The *McFarland* court was addressing whether the transfer of the security interest by the debtor was in connection with an antecedent debt and neither applied nor discussed the implications of § 547(c)(3)(B).[3] Nor does the *Berzito* case provide solace to ASFS; with all due respect to the *Berzito* court, this Court believes *Berzito* misinterprets the meaning of "possession" by coupling the term with transferable rights held by the debtor.[4] This interpretation collides with the plain meaning of the statutory language and the Congressional intent indicated by its history.

## IV. Conclusion

For the reasons discussed above, the Defendant's Motion for Summary Judgment is denied, and the Plaintiff's Cross-Motion for Summary Judgment is granted. The Court will enter a separate final judgment consistent with the foregoing.

---

2. Prior to the 1984 amendments, § 547(c)(3) read as follows:

   (c) The trustee may not avoid under this section a transfer—

   . . .

   (3) of a security interest in property acquired by the debtor—
   (A) to the extent such security interest secures new value that was—
   (i) given at or after the signing of a security agreement that contains a description of such property as collateral;
   (ii) given by or on behalf of the secured party under such agreement;
   (iii) given to enable the debtor to acquire such property; and
   (iv) in fact used by the debtor to acquire such property; and
   (B) that is perfected before *10 days after such security interest attaches[.]*

(Emphasis added.)

3. The *McFarland* Court was also applying the version of § 547(e) that was in effect in 1990; this earlier version does not contain the clause "except as provided in subsection (c)(3)(B)" now included in subsection (e)(2)(A).

4. The harsh result envisioned by *Berzito* simply does not exist, that being the requirement that the automobile dealer must know and note the existence of the financier before having identified that entity. In fact, the timing of the debtor's possession is peculiarly within the control of the dealer: he need only postpone delivery of the vehicle to the debtor until financing is completed.